IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PINNACLE BANK, | ) |
|     PLAINTIFF, | ) |
| v. | ) CASE NO. 24-CV-503 |
| VETERINARY MANAGEMENT INCORPORATED, | ) |
| MAIN STREET VETERINARY HOLDINGS, LLC, | ) |
| DAVID S. HOE & LORI A. HOE, | ) |
|     DEFENDANTS. | ) |

## **COMPLAINT**

NOW COMES Plaintiff Pinnacle Bank ("Pinnacle") and alleges and complains of Defendants Veterinary Management Incorporated ("Defendant VMI"), Main Street Veterinary Holdings LLC ("Defendant Main Street"), David S. Hoe, and Lori A. Hoe (collectively with David S. Hoe, the "Individual Defendants," and the Individual Defendants collectively with Defendant VMI and Defendant Main Street, the "Defendants") as follows:

### **Introduction**[1]

1. This is an action to assert Pinnacle's contractual rights against Defendants, who have materially breached their obligations under the Phase 2 Guaranties.

2. On November 1, 2023, Pinnacle and Philadelphia Animal Specialty and Emergency PLLC ("PASE"), a Pennsylvania professional limited liability company, executed documents pursuant to which Pinnacle extended the so-called Phase 2 Loans to PASE for the purpose of upfitting and equipping a veterinary facility on certain Property in Philadelphia, Pennsylvania.

---

[1] Capitalized terms used but not defined in this section shall have the meaning ascribed to them in the body of the Complaint.

3. The Phase 2 Loans are comprised of two separate loans: a conventional loan and a loan backed by the U.S. Small Business Administration ("SBA").

4. On January 31, 2024, approximately three months following the execution of the Phase 2 Loan Documents, PASE's principals revealed to Pinnacle that the building on the Property was structurally unsound.

5. Specifically, Pinnacle learned that, on or about August 10, 2023, nearly three full months *before* execution of the Phase 2 Loans, PASE received a Deficiency Assessment prepared by the engineering firm MPP Engineers LLC detailing dozens of structural deficiencies that compromise the Property's safety and structural adequacy.

6. Pinnacle also learned that, on November 2, 2023, just one day after the execution of the Phase 2 Loan Documents, PASE's landlord, OCF Realty LLC, with which PASE had entered into a sublease as subtenant relating to the Property, commenced an action against the Property's owner with respect to the required urgent structural repairs to the Property described in the Deficiency Assessment.

7. Lastly, Pinnacle learned that, on November 7, 2023, less than one week after execution of the Phase 2 Loan Documents, the City of Philadelphia Department of Licenses and Inspections posted an Unsafe Structure Notice on the Property stating that, among other things, the Property was in violation of certain city ordinances and was unsafe for use.

8. Pinnacle believes that PASE was aware of these structural deficiencies, OCF's plan to file suit against the Property's owner, and the fact that the Property was in violation of City of Philadelphia code at the time of execution of the Phase 2 Loan Documents.

9. As such, several of the representations and warranties PASE made in the Phase 2 Loan Documents were incorrect or misleading, and these breaches of PASE's representations and warranties constitute events of default under the Phase 2 Loan Documents.

10. Based on these events of default, Pinnacle sent PASE a Notice of Default on March 15, 2024, setting out PASE's Specified Events of Default under the Phase 2 Loan Documents, which accelerated all of the Phase 2 Obligations and reserved all available rights and remedies available to Pinnacle under the Phase 2 Loan Documents.

11. On November 1, 2023, at the time of execution of the Phase 2 Loan Documents, Defendants each executed Guaranties of the Phase 2 Obligations.

12. Upon the occurrence of the Specified Events of Default, the delivery of the Notice of Default, and the acceleration of the Phase 2 Obligations, Defendants became liable for the unpaid Phase 2 Obligations.

13. PASE and Defendants have failed to pay the outstanding Phase 2 Obligations. Due to this failure, Pinnacle has suffered and continues to suffer significant damages and is entitled to recover the Phase 2 Obligations from Defendants.

**Parties**

14. Plaintiff Pinnacle is a bank incorporated, organized, and existing under the laws of the State of Tennessee, with its main office and principal place of business located in Nashville, Tennessee.

15. Defendant Veterinary Management Incorporated is a corporation organized and existing under the laws of the State of North Carolina, with its main office and principal place of business located in Davidson, North Carolina.

16. Defendant Main Street Veterinary Holdings LLC is a limited liability company organized and existing under the laws of the State of North Carolina, with its main office and principal place of business located in Cornelius, North Carolina.

17. Defendant David S. Hoe is a citizen and resident of Mecklenburg County, North Carolina.

18. Defendant Lori A. Hoe is a citizen and resident of Mecklenburg County, North Carolina.

## Jurisdiction

19. This Court has jurisdiction over this proceeding on the basis of diversity of citizenship, as it is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a)(1).

20. Pinnacle asserts damages in the amount of $594,377.85, which exceeds the $75,000 requirement for diversity jurisdiction.

21. Pinnacle is a citizen of the State of Tennessee, as it is a state-chartered bank in the State of Tennessee and maintains its principal place of business in Nashville, Davidson County, Tennessee.[2]

22. Individual Defendants are North Carolina citizens, as they are domiciled in Cornelius, Mecklenburg County, North Carolina.[3]

---

[2] *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (noting that state banks, usually chartered as corporate bodies by a particular state, are deemed to be a citizen of any state in which it is incorporated and of the state where it has its principal place of business); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 220 (2d. Cir. 2016) ("[A] state-chartered corporation—which includes state-chartered banks—is a citizen of both the state of incorporation and the state of its 'principal place of business.'").

[3] *See Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017) (holding that a person is a citizen of a state if they are a United States citizen and a domiciliary of that state).

#502535100_v5

23. Defendant VMI is a North Carolina citizen, as it is a corporation which was incorporated in the State of North Carolina and which has its principal place of business in Davidson, Mecklenburg County, North Carolina.[4]

24. Defendant Main Street is a North Carolina citizen, as it is a limited liability company that, upon information and belief, has only two members, namely, Individual Defendants, who are both North Carolina citizens.[5]

## Factual Allegations

### A. *The Phase 2 Loans*

25. Pinnacle and PASE are parties to a series of loans (the "Phase 2 Loans"),[6] which were executed for the purpose of upfitting and equipping a 24/7 veterinary emergency room, critical care, inpatient surgery, neurology, internal medicine, and inpatient cardiology facility on real property leased by PASE at 1924 Washington Avenue and 1921 Alter Street, Philadelphia, Pennsylvania (the "Property").

26. Lori Hoe is the manager of PASE.

27. The Phase 2 Loans consist of the following documents:

   (a) That certain Loan Agreement, dated as of November 1, 2023, in relation to Loan Number 90786778 in the original principal amount of $3,192,000.00 (the "Conventional Loan Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A** and incorporated by reference herein;

   (b) That certain Loan Agreement, dated as of November 1, 2023, in relation to SBA Loan Number 5476419109 made pursuant to the Terms and Conditions issued by the SBA dated October 24, 2023, in the original principal amount of $3,192,000.00 (the "SBA Loan Agreement" and, collectively with the Conventional Loan Agreement, the "Loan Agreements"), a true and accurate

---

[4] *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . .").
[5] *See Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members . . . ." (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004))).
[6] Pinnacle and PASE are also parties to a separate set of loans known as the Phase 1 Loans. This lawsuit does not relate to the Phase 1 Loans in any respect. Pinnacle reserves all rights as to the Phase 1 Loans and waives none.

copy of which is attached hereto as **Exhibit B** and incorporated by reference herein;

(c) That certain Construction Loan Agreement, dated as of November 1, 2023, in relation to the Conventional Loan Agreement (the "Conventional Construction Loan Agreement"), a true and accurate copy of which is attached hereto as **Exhibit C** and incorporated by reference herein;

(d) That certain Construction Loan Agreement, dated as of November 1, 2023, in relation to the SBA Loan Agreement (the "SBA Construction Loan Agreement" and, collectively with the Conventional Construction Loan Agreement, the "Construction Loan Agreements"), a true and accurate copy of which is attached hereto as **Exhibit D** and incorporated by reference herein;

(e) That certain Commercial Term Promissory Note, dated as of November 1, 2023, executed by PASE in favor of Pinnacle (the "Conventional Loan Note"), a true and accurate copy of which is attached hereto as **Exhibit E** and incorporated by reference herein;

(f) That certain U.S. Small Business Administration Note, dated as of November 1, 2023, executed by PASE in favor of Pinnacle (the "SBA Loan Note" and, collectively with the Conventional Loan Note, the "Notes"), a true and accurate copy of which is attached hereto as **Exhibit F** and incorporated by reference herein;

(g) That certain Security Agreement, dated as of November 1, 2023, executed by PASE, Defendant VMI, and Defendant Main Street in favor of Pinnacle (the "Conventional Loan Security Agreement"), a true and accurate copy of which is attached hereto as **Exhibit G** and incorporated by reference herein;

(h) That certain U.S. Small Business Administration Security Agreement, dated as of November 1, 2023, executed by PASE, Defendant VMI, and Defendant Main Street in favor of Pinnacle (the "SBA Loan Security Agreement" and, collectively with the Conventional Loan Security Agreement, the "Security Agreements"), a true and accurate copy of which is attached hereto as **Exhibit H** and incorporated by reference herein;

(i) That certain North Carolina Deed of Trust, Security Agreement and Fixture Filing, dated as of November 1, 2023, executed by Defendant Main Street in favor of Pinnacle and recorded as Instrument Number 2023104908 in the records of the Register of Deeds of Mecklenburg County, North Carolina (the "Conventional Loan Deed of Trust"), a true and accurate copy of which is attached hereto as **Exhibit I** and incorporated by reference herein;

(j) That certain North Carolina Deed of Trust, Security Agreement and Fixture Filing, dated as of November 1, 2023, executed by Defendant Main Street in favor of Pinnacle and recorded as Instrument Number 2023104906 in the records of the Register of Deeds of Mecklenburg County, North Carolina (the

"SBA Loan Deed of Trust" and, collectively with the Conventional Loan Deed of Trust, the "Deeds of Trust"), a true and accurate copy of which is attached hereto as **Exhibit J** and incorporated by reference herein;

(k) Unconditional Guaranty Agreements, dated as of November 1, 2023, executed by each Defendant and pursuant to which Defendants guaranteed the payment and performance of PASE's obligations with respect to the Conventional Loan Note (the "Conventional Loan Guaranties"), true and accurate copies of which are attached hereto as **Exhibits K–N** and incorporated by reference herein;

(l) U.S. Small Business Administration Unconditional Guarantees, dated as of November 1, 2023, executed by each Defendant and pursuant to which Defendants guaranteed the payment and performance of PASE's obligations with respect to the SBA Loan Note (the "SBA Loan Guarantees" and, collectively with the Conventional Loan Guaranties, the "Guaranties") (the foregoing agreements and all other agreements, instruments, and other documents executed in connection with or relating to the Phase 2 Loans, collectively the "Phase 2 Loan Documents"), true and accurate copies of which are attached hereto as **Exhibits O–R** and incorporated by reference herein.

28. Pursuant to the Conventional Loan Guaranties, Defendants "unconditionally guarantee to [Pinnacle] . . . the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, the principal of and interest on and all other sums payable, or stated to be payable, with respect to the [Conventional Loan] Note of [PASE], payable to [Pinnacle] . . . ." Conventional Loan Guaranties at 1.

29. The current balance due and owing under the Conventional Loan Note is $236,997.34 (the "Conventional Loan Obligations"), comprised of a principal balance of $236,229.59 and accrued interest in the amount of $767.75.

30. Pursuant to the SBA Loan Guarantees, each Defendant "unconditionally guarantees payment to [Pinnacle] of all amounts owing under the [SBA Loan] Note." SBA Loan Guarantees § 1.

31. The current balance due and owing under the SBA Loan Note is $357,380.51 (the "SBA Loan Obligations"), comprised of a principal balance of $356,238.59 and accrued interest in the amount of $1,141.92.

32. The current aggregate balance due and owing on the Phase 2 Loans is $594,377.85 (the "Phase 2 Obligations").

33. Defendants are fully and unconditionally liable for the Phase 2 Obligations.

### B. PASE's Defaults Under the Phase 2 Loan Documents[7]

34. Pursuant to section 9(e) of the Construction Loan Agreements, a default occurs if "[a]ny representation or warranty made by [PASE] in this [Construction Loan] Agreement proves to have been incorrect or misleading in any material respect." Construction Loan Agreements § 9(e).

35. Under section 7(c) of the Construction Loan Agreements, PASE represented and warranted to Pinnacle that "[t]here are no judgments, decrees, claims, actions, suits or proceedings pending or, to the knowledge of [PASE], threatened against or affecting [PASE] or any property of [PASE], at law or in equity, by or before any court or any agency, which, if adversely determined, could result in a material adverse change in the financial condition of [PASE]." Construction Loan Agreements § 7(c).

36. On November 2, 2023, just one day after execution of the Phase 2 Loan Documents, OCF Realty LLC ("OCF"), with which PASE had entered into a sublease as subtenant relating to the Property, commenced an action[8] against Jacob A. Gulli, owner of the Property, seeking a judicial determination of the respective obligations of OCF and Gulli under their lease agreement with respect to required urgent structural repairs to the Property.

37. Upon information and belief, PASE was aware of OCF's planned action against Gulli relating to the Property at or before the execution of the Phase 2 Loan Documents, and thus

---

[7] All capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the respective Phase 2 Loan Documents cited.
[8] The action, styled as *OCF Realty v. Gulli*, is pending in the Philadelphia Court of Common Pleas under Control Number 23112044 and Case ID 231100403.

the representation and warranty that there were no "actions, suits or proceedings pending or, ***to the knowledge of [PASE], threatened against*** or affecting [PASE] or any property of [PASE]" was incorrect or misleading in a material respect. A true and accurate copy of OCF's *Emergency Motion for Preliminary Injunction* is attached hereto as **Exhibit S** and incorporated by reference herein.

38. Under section 7(i) of the Construction Loan Agreements, PASE represented and warranted that "[t]he Project to be constructed on the Land, and the use of the Project for its intended purposes, will not violate any Law or restrictive covenant or agreement of [PASE] (either now in existence or known by [PASE] to be proposed) applicable to the Land or its use, and all requirements for such use have been satisfied." Construction Loan Agreements § 7(i).

39. On November 7, 2023, less than one week after execution of the Phase 2 Loan Documents, the City of Philadelphia Department of Licenses and Inspections posted an Unsafe Structure Notice of Violation Warning (the "Unsafe Structure Notice") on the Property stating, among other things, that the Property "is in violation and unsafe pursuant to Property Maintenance Code section PM-108." A true and accurate image of the Unsafe Structure Notice is attached hereto as **Exhibit T** and incorporated by reference herein.

40. Upon information and belief, PASE was aware of the unsafe condition of the Property and its likely violation of the City of Philadelphia Property and Maintenance Code at the time of execution of the Phase 2 Loan Documents.

41. Furthermore, on or about August 10, 2023, nearly three full months before execution of the Phase 2 Loan Documents, PASE received a Structural Building Deficiency Assessment (the "Deficiency Assessment") prepared by MPP Engineers LLC relating to the

Property. A true and accurate copy of the Deficiency Assessment is attached hereto as **Exhibit U** and incorporated by reference herein.

42. The Deficiency Assessment identifies "several structural deficiencies with the base building" and recommends "that the building owner's engineer perform a full and independent review of the building to develop appropriate repair details to ensure the safety and structural adequacy of the base building." Deficiency Assessment at 1.

43. The Deficiency Assessment lists thirty (30) deficiencies with the structure on the Property and includes forty-three (43) photographs of these deficiencies.

44. Upon information and belief, PASE received the Deficiency Assessment and was aware of the deficiencies with the Property listed therein well in advance of execution of the Phase 2 Loan Documents.

45. As such, the representation and warranty that "the use of the Project for its intended purposes, will not violate any Law . . . applicable to the Land or its use, and all requirements for such use have been satisfied" was incorrect or misleading in a material respect. PASE did not inform Pinnacle of the Deficiency Assessment or the information contained therein until January 31, 2024.

46. Under section 7(j) of the Construction Loan Agreements, PASE represented and warranted that "[a]ll necessary Permits have been obtained with respect to the Project, or will be obtained prior to commencing the particular work for which they are required." Construction Loan Agreements § 7(j).

47. The Unsafe Structure Notice contains the following language: "You are hereby ordered to repair or demolish said premises within 30 days of this notice. You are also required to obtain all necessary permits to repair or demolish the premises."

48. Based on this language in the Unsafe Structure Notice, PASE's representation and warranty that "[a]ll necessary Permits have been obtained with respect to the Project, or will be obtained prior to commencing the particular work for which they are required" was incorrect or misleading in a material respect.

49. Under the Conventional Loan Note, it is an event of default if "any representation or warranty made by [PASE] or any guarantor of any obligation of [PASE] to [Pinnacle], including without limitation, any representation or warranty contained herein, or any statement, certificate or other data furnished by any of them in connection herewith, proves at any time to be incorrect or untrue in any material respect[.]" Conventional Loan Note at 3.

50. Thus, the incorrect or untrue representations and warranties identified above constitute events of default under the Conventional Loan Note.

51. Further, by withholding from Pinnacle the existence of the Deficiency Assessment and the information therein until January 31, 2024, PASE's statements and/or data furnished in connection with the Conventional Loan Note have proven to be incorrect or untrue by omission in a material respect.

52. Under the Conventional Loan Note, it is an event of default if "at any time, Pinnacle believes in good faith that the prospect of payment of any obligation or the performance of any agreement of [PASE] or any guarantor of any obligation of [PASE] to [Pinnacle] is impaired, or there is such a change in the assets, liabilities, condition (financial, operating or otherwise) or business of [PASE] or any such guarantor as [Pinnacle] believes in good faith increases its risk of non-collection." Conventional Loan Note at 3.

53. In light of the structural deficiencies identified in the Deficiency Assessment, knowledge of which PASE withheld from Pinnacle both prior to and following the execution of

the Phase 2 Loan Documents until January 31, 2024, and in light of the Unsafe Structure Notice issued by the City of Philadelphia Department of Licenses and Inspections, Pinnacle believes in good faith that the prospect of payment of the Phase 2 Loan Obligations is impaired.

54. The events of default described in paragraphs 33 through 52 shall be referred to collectively herein as the "Specified Events of Default."

55. Based on the Specified Events of Default listed above, PASE is in default under the Conventional Loan Note.

56. Under the terms of the Conventional Loan Note, upon the occurrence of any Event of Default (as defined therein), "the entire indebtedness with accrued interest thereon and any other sums due under this Note, shall, at the option of [Pinnacle], become immediately due and payable without presentment or demand for payment, notice of non-payment, protest or any other notice or demand of any kind, all of which are expressly waived by [PASE]." Conventional Loan Note at 3.

57. Under section 4 of the SBA Loan Note, it is an event of default if PASE: "A. Fails to do anything required by this [SBA Loan] Note and other Loan Documents; [or] B. Defaults on any other loan with [Pinnacle.]"

58. Based on the Specified Events of Default listed above, PASE is in default under the SBA Loan Note.

59. Further, under section 5 of the SBA Loan Note, if there is a default, then Pinnacle may, without notice or demand and without giving up any of its rights, require immediate payment of all amounts owing under the SBA Loan Note or collect all amounts owing from PASE or any Defendant.

### C. Pinnacle's Notice of Defaults and Reservation of Rights

60. On March 15, 2024, Pinnacle sent a *Notice of Events of Default, Cessation of Disbursements, Acceleration of Indebtedness and Reservation of Rights* (the "Notice of Default") to PASE and each Defendant informing them of the Specified Events of Default, accelerating the Phase 2 Obligations, and reserving all rights under the Phase 2 Loan Documents as a result of the Specified Events of Default. A true and correct copy of the Notice of Default is attached hereto as **Exhibit V** and incorporated herein by reference.

### D. Defendants' Material Breaches of the Guaranties

61. As noted above, the Conventional Loan Guaranties provide that Defendants "unconditionally guarantee to [Pinnacle], its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal and interest on and all other sums payable, or stated to be payable, with respect to the [Conventional Loan] Note . . . ." Conventional Loan Guaranties at 1.

62. Further, Defendants "waive any and all presentment, demand, protest or notice of dishonor, nonpayment or other default with respect to any of the Liabilities . . . ." *Id.*

63. Finally, the Conventional Loan Guaranties provide:

> [i]n case [PASE] shall fail to pay all or any part of the [Conventional Loan Obligations] when due, whether by acceleration or otherwise, according to the terms of the Note, or either of them, [Defendants], immediately upon the written demand of [Pinnacle], will pay to [Pinnacle] the amount due and unpaid by [PASE] as aforesaid, in like manner as if such amount constituted the direct and primary obligation of [Defendants]. [Pinnacle] shall not be required, prior to any such demand on, or payment by, [Defendants], to make any demand upon or pursue or exhaust any of its rights or remedies against [PASE] or others with respect to the payment of any of the [Conventional Loan Obligations], or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.

*Id.* at 2.

64. Under the SBA Loan Guarantees, each Defendant "unconditionally guarantees payment to [Pinnacle] of all amounts owing under the [SBA Loan] Note." SBA Loan Guarantees § 1.

65. Further, each Defendant "must pay all amounts due under the [SBA Loan] Note when [Pinnacle] makes written demand upon [Defendant]. [Pinnacle] is not required to seek payment from any other source before demanding payment from [Defendant]." *Id.*

66. Additionally, each Defendant waived any notice of presentment, dishonor, protest, or demand. *Id.* § 6.B.2.

67. Upon the occurrence of the Specified Events of Default, the delivery of the Notice of Default, and the acceleration of the Phase 2 Obligations, Defendants became immediately liable for the Phase 2 Obligations.

68. Defendants are jointly and severally liable for the Phase 2 Obligations. Conventional Loan Guaranties at 2; SBA Loan Guarantees § 9.D.

69. Defendants failed to satisfy the accelerated obligations due under the Guaranties as demanded by, and in further violation of their obligations to, Pinnacle.

70. Accordingly, Pinnacle has brought this action to enforce its rights and remedies under the Guaranties, at law and in equity, including seeking money judgements against Defendants.

71. Each Defendant has failed to fulfill their Phase 2 Obligations in accordance with the Guaranties.

### E. Attorneys' Fees

72. Under both the Conventional Loan Note and the SBA Loan Note, reasonable costs, expenses, and reasonable attorneys' fees incurred by Pinnacle in collecting under or enforcing the

14

Notes may be added to the principal balance of the Conventional Loan Obligations and the SBA Loan Obligations, respectively.  *See* Conventional Loan Note at 1; SBA Loan Note § 6.B.

73. Further, under the SBA Loan Guarantees, Defendants promise "to pay all expenses [Pinnacle] incurs to enforce [the SBA Loan Guarantees], including, but not limited to, attorney's fees and costs." SBA Loan Guarantees § 9.A.

## First Claim for Relief
*Breach of Conventional Loan Guaranties Against Defendants*

74. Pinnacle incorporates and restates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth below.

75. The Conventional Loan Guaranties are valid, enforceable, and unexpired contracts between Pinnacle and Defendants.

76. The Conventional Loan Note is in default and has been accelerated.

77. The Conventional Loan Guaranties are in default and are immediately due and payable pursuant to their terms.

78. Defendants have failed to pay the amounts due and owing under the Conventional Loan Guaranties.

79. Pinnacle has suffered, and continues to suffer, significant damages as a result of Defendants' default on the Conventional Loan Note, default of the Conventional Loan Guaranties, and failure to pay the amounts due and owing under the Conventional Loan Guaranties.

80. Pinnacle is entitled to recover its damages from Defendants for the aforementioned material breaches in an amount equal to all amounts payable by Defendants under the Conventional Loan Note, including reasonable attorneys' fees, costs, and expenses.

## Second Claim for Relief
### *Breach of SBA Loan Guarantees Against Defendants*

81. Pinnacle incorporates and restates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth below.

82. The SBA Loan Guarantees are valid, enforceable, and unexpired contracts between Pinnacle and Defendants.

83. The SBA Loan Note is in default and has been accelerated.

84. The SBA Loan Guarantees are in default and are immediately due and payable pursuant to their terms.

85. Defendants have failed to pay the amounts due and owing under the SBA Loan Guarantees.

86. Pinnacle has suffered, and continues to suffer, significant damages as a result of Defendants' default on the SBA Loan Note, default on the SBA Loan Guarantees, and failure to pay the amounts due and owing under the SBA Loan Guarantees.

87. Pinnacle is entitled to recover its damages from Defendants for the aforementioned material breaches in an amount equal to all amounts payable by Defendants under the SBA Loan Note, including reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Pinnacle respectfully prays upon the Court as follows:

1. That Pinnacle have and recover from Defendants damages of at least $594,377.85, plus incidental and consequential damages, for Defendants' breach of the Conventional Loan Guaranties and breach of the SBA Loan Guaranties;

2. That Pinnacle have and recover from Defendants its reasonable attorneys' fees and expenses, as a matter of law or equity;

3. For pre-judgment interest;

4. That the cost of this action be taxed to Defendants; and

5. For such other and further relief the Court deem just and proper.

Dated:  May 23, 2024

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Nishma Patel*
Thomas Woodrow
N.C. Bar No. 58622
Nishma Patel
N.C. Bar No. 50922
1120 S. Tryon Street, Suite 900
Charlotte, North Carolina 28203
Telephone: (980) 215-7828
tom.woodrow@hklaw.com
nishma.patel@hklaw.com

*Counsel for Plaintiff Pinnacle Bank*